Filed 9/15/23  P. v. Dominguez CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. ANDY EMMANUEL DOMINGUEZ, Defendant and Appellant. | B321822 (Los Angeles County Super. Ct. No. TA152421) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ricardo R. Ocampo, Judge.  Affirmed.

Kathleen Caverly and Sydney Banach, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri and Marc A. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

————————————————————

Appellant Andy Emmanuel Dominguez stabbed his father. A jury convicted him of aggravated mayhem. (Pen. Code, § 205.)[1] The court found he has a prior felony strike. It sentenced him to 14 years to life in prison. On appeal, he argues that (1) the court abused its discretion by refusing to dismiss his prior strike, and (2) he received ineffective assistance of counsel. We find no error and affirm the judgment.

**FACTS**

Andres Dominguez shared an apartment with appellant and the Hidalgos. Mr. Dominguez said he had an "excellent" relationship with his son, with "no issues" between them. Mr. Hidalgo testified that the Dominguezes "got along well."

On July 27, 2020, Mr. Dominguez made dinner for himself and appellant. Appellant seemed "normal." When they finished, Mr. Dominguez said he was going to bed because he had to work the next morning. He retired to his bed to watch television.

Appellant entered the bedroom, saying he heard voices. When he asked his father who he was talking to, Mr. Dominguez replied, "It's the TV that . . . I have on right now. I'm not talking to anyone." Appellant said, "I'm going to hit you," and jumped onto the bed. Mr. Dominguez thought appellant was playing or "goofing around." Then he grabbed appellant's hand and realized that he was holding a blade.

Mr. Dominguez tumbled from the bed to the floor, letting go of appellant's hand as he fell. Appellant struck his father in the stomach with the knife. Mr. Dominguez felt the blade enter his body, leaving a 15-inch gash down to his groin. He did not try to get up. Appellant remained standing.

---

[1] Undesignated statutory references are to the Penal Code.

Mr. Dominguez called out to Mr. Hidalgo for help. As Mr. Hidalgo approached, he saw appellant in the hallway outside the victim's bedroom. Without saying anything, appellant "just left" the apartment. Mr. Hidalgo saw the victim on the floor, in pain, "with all of his intestines outside," lots of blood, and a knife case on the floor. He did not hear appellant threaten to kill Mr. Dominguez before the stabbing.

When Deputy Sheriff Allan Mata arrived, he saw the victim on the bedroom floor in a pool of blood, his entrails protruding from his stomach. He was conscious and in pain. Another deputy described "a gallon of blood on the floor."

Mr. Dominguez was taken to the hospital, where he had surgery and remained for a week. He declined to show his scar at trial because "it doesn't look good for people to see it."

Appellant returned to the apartment the following day but could not enter because Mr. Hidalgo had changed the locks. When appellant asked for a bag that was in the apartment, Mr. Hidalgo called 911. Appellant asked Mr. Hidalgo for forgiveness but did not extend that sentiment to his father. Deputies came and arrested appellant, who was unarmed, "cool, calm and collected," and did not appear to be under the influence.

## PROCEDURAL HISTORY

Appellant was charged with attempted murder and aggravated mayhem. (§§ 664/187, 205.) The information alleged a prior conviction for assault with a deadly weapon. (§§ 245, subd. (a)(1), 667.) He waived his right to a jury trial on the prior conviction allegation.

The jury acquitted appellant of attempted murder but convicted him of aggravated mayhem. It found that the offense involved great violence, great bodily harm, and acts disclosing a

high degree of cruelty, viciousness, and callousness.  It further found that he was armed with a weapon.  In a bifurcated trial, the court found beyond a reasonable doubt that appellant has a 2013 conviction for assault with a deadly weapon, resulting in a three-year prison sentence.

The court deemed appellant ineligible for probation.  Aggravating factors included weapon use and high degree of cruelty and callousness; appellant's crimes "are numerous and increasing in seriousness."  It found no mitigating factors.

Defense counsel asked the court to dismiss the felony strike because "it is quite old" and appellant's criminal record is "minimal."  The court acknowledged its discretion to strike the prior but refused to do so, citing "the circumstances of aggravation."  The prior raised eligibility for parole from seven to 14 years.  The total sentence is 14 years to life.

## DISCUSSION

### 1.    Request to Strike a Prior Felony Conviction

The trial court may, in furtherance of justice, strike a prior felony conviction. (§ 1385; *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 529–530 (*Romero*).)  We review its ruling for abuse of discretion.  (*Romero*, at p. 530.)  Appellant must " ' "clearly show that the sentencing decision was irrational or arbitrary.  [Citation.]  In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' "  (*People v. Carmony* (2004) 33 Cal.4th 367, 376–377.)

When deciding whether to strike a prior conviction, the court weighs "the constitutional rights of the defendant and *the interests of society represented by the People*."  (*Romero, supra,* 13

4

Cal.4th at p. 530.) It considers if "in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) Aggravating and mitigating factors are relevant. (*People v. Dryden* (2021) 60 Cal.App.5th 1007, 1029; Cal. Rules of Court, rules 4.421, 4.423.)

The grave nature of the present offense cannot be understated: Appellant disemboweled his father, who was lying defenseless in bed. Nonetheless, appellant contends that the court "fail[ed] to consider the relevant mitigating factors." He points to the remoteness of his prior conviction and his age (18) when it was committed, relying on *People v. Avila* (2020) 57 Cal.App.5th 1134, 1140–1141 (*Avila*).

Appellant acknowledges that "the remoteness of prior strikes alone is not sufficient to take a defendant out of the spirit of the Three Strikes law." (*Avila, supra*, 57 Cal.App.5th at p. 1141, citing § 667, subd. (c)(3) ["[t]he length of time between the prior serious or violent felony conviction and the current felony conviction shall not affect the imposition of sentence"].) Moreover, his age is only "potentially relevant" to the sentencing analysis. (*People v. Mendoza* (2022) 74 Cal.App.5th 843, 861.)

Appellant's 2013 conviction for assault with a deadly weapon is not remote. It occurred seven years before the current offense. This is not comparable to *Avila*, in which prior crimes occurred *decades* earlier, when Avila—now "middle-aged"—was 18 and 20 years old. (*Avila, supra*, 57 Cal.App.5th at pp. 1141–1142.) Avila "did not use a weapon or otherwise use physical violence against the victims . . . . He squashed oranges" while

5

demanding "rent" from street vendors.  (*Id*. at pp. 1139, 1142.)
By contrast, appellant's knife attack on his father caused extreme
loss of blood, injuries requiring lengthy hospitalization, and
scarring.

A prior is not remote if appellant did not have "a crime-free
cleansing period of rehabilitation" but "led a continuous life of
crime after the prior."  (*People v. Humphrey* (1997) 58
Cal.App.4th 809, 813; *People v. Vasquez* (2021) 72 Cal.App.5th
374, 390.)  The record reveals that appellant was not
rehabilitated by his prison stint for assault with a deadly
weapon.  Instead, he continued to engage in criminality.

The probation report shows that in 2017, not long after his
release for the prior felony, appellant was (1) convicted and
sentenced to 32 months in prison for grand theft auto (§ 487,
subd. (d)(1)); (2) convicted and sentenced to 36 months in jail for
trespass (§ 602); and (3) convicted of bringing contraband to jail
and sentenced to eight months in prison (§ 4573.5).  His record is
not "minimal," contrary to trial counsel's claim.

The court's refusal to strike appellant's prior conviction is
not "so irrational or arbitrary that no reasonable person could
agree with it."  (*People v. Carmony, supra,* 33 Cal.4th at p. 377.)
Appellant's unbroken history of criminality, despite repeated
incarcerations, belies any claim that his prior conviction was
mere youthful folly.  The court could reasonably conclude—after
considering the gravity of appellant's current felony, his history
and prospects—that he falls within the intent of the Three
Strikes law to punish recidivists more harshly.  (§ 667, subd. (b).)

## 2.    Ineffective Assistance of Counsel Claim

Appellant asserts that counsel was ineffective for failing to
"make any argument related to [his] mental health issues," or

6

"prepare a sentencing memorandum or a mitigation report" though he had "multiple psychiatric evaluations" that "explicitly connected [his] mental health issues to his criminal conduct." Before trial, appellant repeatedly claimed a conflict with his attorney, who wanted to assert an insanity defense, yet appellant insisted he is not insane.

Appellant was initially deemed incompetent to stand trial in February 2021. Dr. Rothberg saw "signs of psychosis" because appellant believed recordings of sexual activity were piped into his room and delusionally believed he could be exonerated at trial. Appellant "emphatically denies auditory hallucinations or paranoid delusions," but Dr. Rothberg opined that he is schizophrenic, paranoid, and psychotic; he recommended antipsychotic medication. A report in March 2021 noted that appellant understood the nature and purpose of the proceedings but echoed Dr. Rothberg's findings.

A July 2021 state hospital evaluation states that appellant "denied any psychiatric symptoms and none have been observed." He is unmedicated. The "best fitting diagnosis" is a "stimulant-related disorder" caused by methamphetamine use. He understood the charges and possibility of a plea bargain; he listed inconsistencies in the evidence and disagreed with his attorney's plan to plead not guilty by reason of insanity, insisting, "I'm not mentally ill." The hospital held a mock trial, with staff acting as judge, prosecutor, and public defender; it concluded that appellant could assist in his defense.

In October 2021, the state hospital certified appellant competent to stand trial, finding "**no direct evidence of a mental illness and [appellant] may not in fact suffer from one.**" His belief that he may be acquitted is not a mental illness;

7

he knows the risks of his legal strategy but refuses to accept a plea that would land him in a mental ward.

At defense counsel's request, Dr. Rothberg attempted to reinterview appellant, who refused to comply because he wanted to go to trial. Dr. Rothberg disagreed with the state's evaluation, saying that anyone in appellant's place who believes he can be acquitted is delusional. The court read the reports and found appellant competent to stand trial.

At trial, during closing argument, defense counsel said that appellant had "some kind of a psychotic break" and "was hearing voices." We cannot second-guess counsel's tactical decision not to highlight appellant's mental health at sentencing. His mental state was well documented before trial. One report denies *any* mental illness, identifying substance abuse as the correct diagnosis. During the crime and its aftermath, appellant showed consciousness of guilt both in word and in deed. After the stabbing, he quickly fled, disposed of the knife and any bloody clothing, and the following day requested forgiveness and the return of his belongings from Mr. Hidalgo.

Appellant argues that the court failed to consider his mental health issues. However, "[t]he court is presumed to have considered all of the relevant factors" even if it did not mention them all. (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.) Here, the court considered appellant's condition, saying it "does recognize that there is some hint of some mental issue."

Defense counsel sought to convince appellant to claim insanity, seeing no other way to defend him at trial. He forcefully denied insanity. There is no basis for finding he was prejudiced by counsel's acquiescence to his demands to exclude his mental health from discussion. Given the overwhelming

8

evidence of guilt, the viciousness of the crime, and appellant's history of criminality, there is no reasonable probability of a more favorable sentence if counsel's performance were different. (*Strickland v. Washington* (1984) 466 U.S. 668, 694.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

LUI, P. J.

We concur:

ASHMANN-GERST, J.

CHAVEZ, J.